[This opinion has been published in *Ohio Official Reports* at 77 Ohio St.3d 275.]

THE STATE EX REL. PIERCE, APPELLANT, v. INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as State ex rel. Pierce v. Indus. Comm., 1997-Ohio-41.]

*Workers' compensation—Industrial Commission's denial of permanent total disability compensation an abuse of discretion, when—Commission's order violates Noll when it does not explain how claimant's non-medical factors combine to make him work-amenable.*

(No. 94-2425—Submitted October 8, 1996—Decided January 15, 1997.)

Appeal from the Court of Appeals for Franklin County, No. 93APD08-1183.

───────────────

{¶ 1} Appellant-claimant, Russell L. Pierce, was injured in April 1988 in the course of and arising from his employment with appellee Dravo Corporation. Claimant's workers' compensation claim was allowed for "strain back; cervical myofascitis; cephalgia." Claimant continued to work until his injuries forced him from his ironworking job six years later. All treatment has been conservative.

{¶ 2} In 1992, claimant moved appellee Industrial Commission of Ohio for permanent total disability compensation. Dr. J. G. Sprandel II, D.C., and Dr. Norman W. Lefkovitz, M.D., found claimant to be permanently and totally impaired. Industrial Commission specialist Dr. W. Jerry McCloud reported:

"I will say at the onset of the report of this evaluation that Mr. Pierce is not very cooperative with requests that require a subjective response. However, one may fairly estimate that both neurological and radicular evaluation of the upper and the lower extremities is within normal limits. I cannot define a motor nor sensory deficit in either area. When asked to perform the LaSegue sign while sitting he would only extend his legs possibly ten or fifteen degrees and then did complain of back pain but not leg pain. Under the [guise] of examining the knees and the ankles

one could passively extend each of his knees to just about the full position and could do so without the appropriate radicular complaints. He is noted to have functional reversal of the lumbar lordosis while sitting. The pelvis is level. When asked to forward flex he does hold the lumbar spine as a unit and will forward flex but this is occurring at the hips rather than demonstrating any reversal of the lumbar lordosis. I feel this is an inappropriate response. The same sort of situation applies when asked to perform an active cervical range of motion as he will do so to a degree but subjectively demonstrates loss of possibly fifteen degrees of right and left rotation and about two finger breadths of flexion. I suspect there is subjective loss of about the same amount of extension.

"In summary, Mr. Pierce is difficult to specifically evaluate because of the nature of his cooperation but it is within a reasonable degree of medical certainty to estimate that he has no neurological nor radicular changes. He may have some loss of both cervical and lumbar reserve but I do not think he would have other positive physical findings. From a conservative standpoint I do not think restrictions would be necessary in regard to his cervical area but he should not be asked to lift objects in a repetitive fashion whose weight would exceed 20 pounds. This restriction would preclude his work activities as an iron worker.

"It is my opinion that this claimant is not capable of pursuing his 1982 work activities. The changes are permanent and he has reached a level of maximum medical improvement and demonstrates a permanent partial impairment in [claim number] 82-36294 of 30%. 20% related to an admittedly poorly defined loss of 1/2 of his functional lumbar reserve and 10% related to loss of 1/3 of his active cervical reserve. These estimations are for the most part compatible with recommendations made in the Third Edition of the AMA Guidelines on Physical Impairment. He would not be a good candidate for rehabilitation."

{¶ 3} Vocational consultant Daniel Simone assessed a total reduction in claimant's ability to access the labor market. Simone based his conclusions on his

evaluation of claimant's nonmedical conditions in conjunction with the opinions of Drs. Sprandel and Lefkovitz. Simone's opinion was also partially based on his mistaken belief that claimant lacked his GED.

{¶ 4} The commission denied claimant permanent total disability compensation, writing:

"Claimant is 62 years old, has a 10th grade education, and a work history as a foreman ironworker, and journeyman ironworker. His treatment has been strictly conservative. He was able to continue working after his injury for over 6 years. Commission specialist Dr. McCloud has indicated that the claimant has a 30% permanent partial impairment, has no neurological or radicular changes, and would have restrictions against lifting over 20 pounds. Based on the claimant's conservative treatment history, his ability to continue working for over 6 years after the date of injury, the conclusion of Dr. McCloud that the claimant has a minimal impairment of 30% with no neurological or radicular changes, and considering his past work history which includes supervisory experience, it is found that the claimant does possess skills which would transfer to similar or lighter duty employment, and that he should be able to obtain such employment, especially following participation in a reconditioning or work hardening program. Therefore, it is found that the claimant is not permanently precluded from returning to any type of sustained, remuenative [*sic*] employment."

{¶ 5} Claimant filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission abused its discretion in denying him permanent total disability compensation. The court of appeals found that the commission's order did not satisfy *State ex rel. Noll v. Indus. Comm.* (1991), 57 Ohio St. 3d 203, 567 N.E.2d 245. The court declined to order permanent total disability compensation, however, choosing instead to return the cause for further consideration and amended order.

{¶ 6} This cause is now before this court upon an appeal as of right.

*Zwick Law Offices Co., L.P.A.*, and *Victoria Zwick Klapp*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Charles Zamora*, Assistant Attorney General, for appellee Industrial Commission.

*Rendigs, Fry, Kiely & Dennis, Edward R. Goldman* and *Michael P. Foley*, for appellee Dravo Corporation.

_____

*Per Curiam.*

{¶ 7} Claimant characterizes the commission's order as *Noll*-deficient and seeks relief consistent with *State ex rel. Gay v. Mihm* (1994), 68 Ohio St.3d 315, 626 N.E. 2d 666. The court of appeals agreed with claimant's underlying contention, but did not invoke *Gay.* We affirm its judgment.

{¶ 8} The commission's order violates *Noll* because it does not explain how claimant's nonmedical factors combine to make him work-amenable. The commission's mere acknowledgment of claimant's age and education is not enough. *State ex rel. Moss v. Indus. Comm.* (1996), 75 Ohio St.3d 414, 662 N.E.2d 364; see *State ex rel. Hanna v. Indus. Comm.* (1994), 69 Ohio St.3d 120, 630 N.E.2d 693.

{¶ 9} The commission's discussion of claimant's work history is also inadequate. With increasing, and disturbing, frequency we are finding that no matter what claimant's employment background is, the commission finds skills— almost always unidentified -- that are allegedly transferable to sedentary work. In some cases, depending on the claimant's background, these skills are self-evident. In many cases, they are not.

{¶ 10} In *State ex rel. Haddix v. Indus. Comm.* (1994), 70 Ohio St.3d 59, 61, 636 N.E.2d 323, 324, we held:

"The commission determined that claimant's prior work as a gas station attendant and press operator provided him with skills transferable to sedentary employment. The commission's order, however, does not identify what those skills

are. Such elaboration is critical in this case, since common sense suggests that neither prior work is, in and of itself, sedentary."

{¶ 11} The present claimant was an ironworker—a position that is neither sedentary nor light duty. Again, however, the commission found skills transferable to light work, without specifying what those skills were. The reference to supervisory skills, without more, is not enough in this case, given claimant's tenure as a working, as opposed to purely administrative, supervisor.

{¶ 12} The commission's failure to produce a satisfactory order leaves us with two remedies—an award of permanent total disability compensation pursuant to *Gay* or a return to the commission for further consideration pursuant to *Noll.* We find the latter to be appropriate here, given claimant's medical profile. Dr. McCloud rather reluctantly assessed a thirty-percent impairment after suggesting that claimant may have been less than forthright in his medical presentation. The only restriction imposed by Dr. McCloud upon claimant was repetitive lifting in excess of twenty pounds. The lack of the often-seen restrictions on prolonged walking, sitting, standing, etc., appears to leave claimant with considerably more physical reserve than most back-injury claimants. This level of impairment and residual capacity are much more favorable than that generally seen in cases where *Gay* relief issues.

{¶ 13} For these reasons, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and STRATTON, JJ., concur.

_____